**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | : | |
|---|---|---|
| RAMON A. GARCIA | : | |
| Plaintiff, | : | PRISONER CASE NO. |
| | : | 3:17-cv-2068 (JCH) |
| v. | : | |
| | : | |
| JOHN DOE, et al. | : | JANUARY 3, 2018 |
| Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER

On November 27, 2017, the plaintiff, Ramon A. Garcia ("Garcia"), an inmate currently housed at Cheshire Correctional Institution in Cheshire, Connecticut, filed his Complaint pro se pursuant to title 42, section 1983 of the United States Code against (1) Dr. John Doe, an orthodontist with Correctional Managed Health Care, (2) Dr. Cuevas, a dentist at MacDougall-Walker Correctional Institution ("MWCI"), (3) "Nurse Joy," a registered nurse at MWCI, (4) "Nurse Holly," a registered nurse at MWCI, (5) Counselor Supervisor Blanchard, the unit manager at MWCI, and (6) Health Administrator Lightner at MWCI. Garcia is suing Doe in his individual and official capacities and all other defendants in their individual capacities for deliberate indifference to his serious dental needs. He seeks monetary damages. On December 19, 2017, this court granted Garcia's motion to proceed in forma pauperis. See Order (Doc. No. 6). For the following reasons, Garcia's Complaint is dismissed in part.

**I.     STANDARD OF REVIEW**

Pursuant to title 28, section 1915A of the United States Code, this court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous

or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, a complaint must include sufficient facts to afford the defendant fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

## II. FACTUAL ALLEGATIONS

On December 21, 2015, correctional staff transported Garcia from MWCI to the UConn Medical Center for oral surgery. Compl. ¶ 1. Garcia had been suffering from an ongoing dental problem for months. Id. During the surgery, Dr. John Doe continuously injected Garcia with anesthetics and violently "yanked" on his teeth. Id. at ¶ 2. Afterward, Doe told him that Dr. Cuevas, who had previously performed dental work on Garcia, had incorrectly placed a filling on his adjoining tooth and that it had fallen off during the surgery. Id. at ¶ 3. Doe instructed Garcia to tell Cuevas to replace the filling. Id. He then prescribed Garcia 5 mg of Percocet to take every six hours for two days and Paradox, a special mouthwash to use to prevent infection. Id. at ¶ 4.

2

Sometime after the surgery, the anesthetics that Doe had applied began to wear off and Garcia felt excruciating pain in his mouth, head, and face. Compl. ¶ 5. A nurse gave him some pain medication, but it did not help much with the pain. Id. At approximately 6:00 p.m., Garcia was transported back to MWCI. Id. at ¶ 6.

A few hours later, Garcia complained to correctional staff of pain and excessive swelling, and an officer sent him to the medical unit at MWCI. Compl. ¶ 7. There, Garcia spoke with Nurse Joy, who refused to give him any pain medication, "in total disregard [of] the doctor's orders."[1] Id. He then returned to his cell where he struggled to sleep due to the intensity of the pain. Id. at ¶ 8.

The next morning, Garcia went to work in the prison laundry facility with nothing to alleviate the pain he was experiencing. Compl. ¶ 9. He pleaded with correctional staff to get him medical attention. Id. at ¶ 10. A correctional officer later told him that he had spoken with medical staff and that Nurse Holly would be coming to see him. Id. Later, Nurse Holly arrived at Garcia's unit. Id. at ¶ 11. Garcia explained to her that the stitches in his mouth were coming apart, that he was experiencing excruciating pain, and that he had not been given any of his prescribed, post-surgical medication, but she refused to help him. Id.

At approximately 2:00 p.m., another nurse came into Garcia's unit and gave him some pain medication. Compl. at ¶ 12. At that point, Garcia could barely speak due to

---

[1] It is unclear whether Garcia is referring to the Percocet prescribed by Dr. Doe in this instance or some other form of pain medication. Because he alleges that Nurse Joy "disregard[ed]" Dr. Doe's orders, the court will draw the inference that Nurse Joy refused to provide him with the prescribed Percocet.

3

the excessive swelling in his jaw and the loose stitches that had come apart in his mouth. Id. He had not eaten much because the medical staff had refused to order him a "soft diet." Id. at ¶ 13. He did not receive all of the pain medication prescribed by Dr. Doe, nor had he received the Paradox mouthwash. Id.

Garcia complained about the inadequate medical treatment he was receiving at MWCI by submitting a written inmate request to Health Administrator Lightner on December 22, 2015, but Lightner did not respond until two months later. Compl. at ¶ 15. Starting on December 28, medical staff locked Garcia in his cell for a week, in what Garcia perceived as an act of retaliation for raising his concerns about the inadequate medical treatment he was receiving. Id. at ¶ 16. Initially, medical staff explained to Garcia that the lockdown order was issued because his cellmate was complaining of flu-like symptoms, but Garcia knew that such quarantine orders are typically carried out in medical unit rooms with special ventilation, not in housing units, and that his cellmate had only complained of a tooth infection. Id. at ¶¶ 17–19. When he explained this to medical staff and to his unit manager, Counselor Supervisor Blanchard, the staff changed their position in an attempt to "cover up their tracks" and argued that he and his cellmate were on "sick-cell" status. Id. at ¶ 19.

On January 20, 2016, Garcia saw Dr. Cuevas. Compl. at ¶ 14. He informed Dr. Cuevas about the filling that had fallen off during the surgery on December 21. Id. Cuevas told him that that was Dr. Doe's fault, and he refused to replace the filling. Id. Cuevas offered to extract the tooth instead, but Garcia refused out of fear of being injured again. Id.

To this day, Garcia continues to experience complications from the surgery and the lack of proper treatment he received. Compl. at ¶ 21. On September 9, 2016, he was evaluated by another dentist at MWCI. Id. The dentist informed him that he had an unidentified object protruding from the area around his gum line on which Dr. Doe operated and that it needed to be removed. Id.

## III. ANALYSIS

Garcia is suing all of the defendants for deliberate indifference to his serious dental health needs, in violation of his Eighth Amendment protection against cruel and unusual punishment. Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Harrison v. Barkley, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). A prisoner may sue an official for acting with deliberate indifference to his serious dental needs. See Chance v. Armstrong, 143 F.3d 698, 702–03 (2d Cir. 1998). In order to state a deliberate indifference claim, Garcia must allege both that his dental need was serious and that the defendants acted with a sufficiently culpable state of mind. See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (citing Estelle v. Gamble, 492 U.S. 97, 105 (1976)). Objectively, the alleged deprivation must be "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, the defendants must have been "actually aware of a substantial risk" that Garcia would suffer serious

5

harm as a result of their conduct. Salahuddin v. Goord, 467 F.3d 263, 280–81 (2d Cir. 2006). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983, see id. at 280, nor does a difference of opinion regarding what constitutes an appropriate response and treatment. See Chance, 143 F.3d at 702–03.

Based on the allegations in the Complaint, the court concludes that Garcia has satisfied the objective component of the deliberate indifference standard. He has shown that he has a sufficiently serious dental health need. The only remaining issue, therefore, is whether Garcia has sufficiently alleged that the defendants were deliberately indifferent to his serious dental needs.

### A. Claims Against Dr. Doe

Garcia claims that Dr. Doe injected him with an unnecessary amount of anesthetics and violently "yanked" on his teeth during the surgery on December 21. The court concludes that these allegations are insufficient to show that Dr. Doe was "actually aware of a substantial risk" that Garcia would suffer serious harm as a result of his conduct. Salahuddin, 467 F.3d at 280. Garcia does not allege that he had complained to Dr. Doe that he was in pain or about his method of performing the oral surgery. Moreover, Garcia acknowledges that Dr. Doe prescribed him pain medication following the surgery. Garcia's claims against Doe are therefore dismissed.

### B. Claims Against Dr. Cuevas

With respect to Dr. Cuevas, Garcia makes two allegations in support of his deliberate indifference claim: (1) that Dr. Cuevas improperly installed the filling that fell

6

off during surgery; and (2) that he refused to replace the filling, offering only to remove the tooth altogether. These two allegations do not show deliberate indifference on Dr. Cuevas's part. First, Garcia does not allege any factual connection between the filling that Cuevas improperly installed and the excruciating pain that he experienced after the surgery, which was performed by Dr. Doe. Second, these allegations show, at most, medical malpractice, which is insufficient to support an Eighth Amendment claim. See Chance, 143 F.3d at 702–03. Therefore, Garcia's claims against Cuevas are dismissed.

    C.    <u>Claims against Nurse Joy and Nurse Holly</u>

Garcia claims that both Nurse Joy and Nurse Holly refused to provide him the pain medication prescribed by Dr. Doe, even after he complained of excruciating post-surgical pain. Courts in this Circuit have permitted deliberate indifference claims based on allegations similar to those stated by Garcia against Joy and Holly. See,e.g., <u>St. Pierre v. Semple</u>, No. 3:14-CV-1866 (VAB), 2015 WL 6872442, at **4–5 (D. Conn. Nov. 9, 2015) (plaintiff stated plausible deliberate indifference claim against nurse who refused to treat him following complaints); <u>Coleman v. Reynolds</u>, No. 04-CV-0761 (JTC), 2012 WL 2450754, at *4 (W.D.N.Y. Jun. 26, 2012) (plaintiff stated plausible deliberate indifference claim against nurse who refused to provide prescribed pain medication). Thus, construing his allegations liberally, the court will permit Garcia's deliberate indifference claim to proceed against Nurses Joy and Holly in their individual capacities for damages.

D. <u>Claims Against Lightner</u>

Garcia is suing Health Administrator Lightner, a supervisory official, based on her failure to adequately respond to his complaints about his housing and medical care at MWCI following his surgery. A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. <u>Hernandez v. Keane</u>, 341 F.3d 137, 145 (2d Cir. 2003); <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994).

The only allegation Garcia makes against Health Administrator Lightner is that she did not timely respond to his inmate request form regarding his dental issues. Failure to respond to a complaint is insufficient to show the personal involvement of a supervisory official. <u>See</u> <u>Thorne v. Cuevas</u>, No. 3:09-CV-1716 (SRU), 2012 WL 1050056, at *6 (D. Conn. Mar. 28, 2012) (fact that defendants failed to respond to plaintiff's inmate request form is insufficient to demonstrate personal involvement in alleged deliberate indifference to dental needs). Furthermore, in this case Health Administrator Lightner did respond, <u>albeit</u> "nearly two months later." Compl. at ¶ 15. Thus, Garcia has failed to state plausible claims against Lightner.

E.  Claims Against Blanchard

Garcia alleges that several days after he filed a complaint related to his dental health problems he was "kept locked inside [his] cell for a week straight in retaliation." Compl. at ¶ 16.  He further alleges that Unit Manager Blanchard, among others, attempted to cover up the retaliatory nature of this treatment by changing the designation of his cell's status from "quarantine" to "sick-cell," designations which are governed by different standards.  Id. at ¶ 19.  The court construes these allegations against Blanchard as a claim of retaliation pursuant to section 1983.  To state a claim of retaliation, Garcia must plausibly allege that "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action."  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001)).

With respect to the first prong of the retaliation standard, the filing of prisoner grievances is protected conduct under the First Amendment.  See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).  Garcia has therefore satisfied the first prong.

As to the second prong, actions are sufficiently adverse to satisfy the retaliation standard if they are actions "that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003) (quoting Dawes, 239 F.3d at 493).  Rodriguez v. McClenning, 399 F. Supp. 2d 228, 239–40 (S.D.N.Y. 2005) (cell searches were not adverse action but planting of evidence and filing of false grievance were adverse actions); Colon, 58 F.3d

at 872 (filing of false disciplinary charges was adverse action); Davis, 320 F.3d at 353 ("[i]nsulting or disrespectful comments" and "hostile manner" of officer were not adverse actions, but lack of high fiber diet, prolonged wait for medical appointment, and barriers to timely filing grievance were adverse actions); Gill, 389 F.3d at 384 (filing of false misbehavior reports that resulted in three weeks in keeplock constituted adverse action); Shariff v. Poole, 689 F. Supp. 2d 470, 478 (W.D.N.Y. 2010) (excessive number of cell searches, false misbehavior reports, confiscation of legal documents, and verbal threats followed by excessive pat frisking and searching constituted adverse action sufficient for section 1983 retaliation claim). Here, Garcia has alleged that officers including Blanchard placed him in a lockdown status with more restrictive conditions than those in the restrictive housing unit for a week. The court concludes that these allegations are sufficient to constitute an adverse action.

As to the third prong, Garcia has alleged that the lockdown occurred only four days after he filed a complaint, that the explanations provided for the lockdown were factually unsupported, and that officers violated medical quarantine procedures and changed the designation when challenged. Compl. at ¶¶ 15–19. He has therefore satisfied the third prong of the adverse action standard, namely that there was a "causal connection" between his complaint and the lockdown.

The final question with respect to Garcia's allegations against Blanchard are whether Blanchard herself was "personally involved" in the alleged retaliation. Garcia has not alleged that Blanchard was responsible for the lockdown in the first place, but has pled facts supporting that Blanchard was informed of the retaliatory lockdown and

attempted to cover up the retaliation rather than addressing it.  See Compl. at ¶ 19.  These facts are sufficient to satisfy the second type of personal involvement, namely that Blanchard learned about the retaliation and failed to remedy the wrong.  See Hernandez, 341 F.3d at 145.  The court therefore concludes that Garcia has adequately pled a retaliation claim against Blanchard.

**IV.    ORDERS**

(1) All claims against Dr. Doe, Dr. Cuevas, and Administrator Lightner are dismissed.  Garcia may replead his Complaint within **twenty-one (21) days** from the date of this Order if he can allege facts to support claims of deliberate indifference to medical safety against Dr. Doe or Dr. Cuevas, or personal involvement of Administrator Lightner.

(2) Garcia's Eighth Amendment claim for deliberate indifference to serious dental needs may proceed against Nurse Joy and Nurse Holly in their individual capacities for damages, and Garcia's First Amendment claim for retaliation may proceed against Blanchard.

(3) The Clerk shall verify the last names of Nurse Joy and Nurse Holly as well as the addresses of all three remaining defendants with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the **thirty-fifth (35) day** after mailing.  If Nurse Joy, Nurse Holly, or Blanchard fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshal

11

Service on her, and she shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(4) Nurse Joy, Nurse Holly, and Blanchard shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

**SO ORDERED.**

Dated this 3rd day of January, 2018, at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge